BLODGETT, APPELLEE AND CROSS-APPELLANT, *v.* BLODGETT, APPELLANT AND CROSS-APPELLEE.

[Cite as Blodgett *v.* Blodgett (1990), 49 Ohio St. 3d 243.]

(No. 88-2135 — Submitted January 16, 1990 — Decided March 14, 1990.)

*Vorys, Sater, Seymour & Pease,*
*John C. Elam, David W. Hardymon,*
*Robert C. Paxton II & Associates* and
*Robert C. Paxton II,* for appellee and
cross-appellant.

*Buckingham, Doolittle & Bur-*
*roughs, L. Andrew Reed, Jr.,*
*Hamilton Desaussure, Jr.* and
*William M. Oldham,* for appellant and
cross-appellee.

WRIGHT, J. William Blodgett contends that the court of appeals erred in refusing to dismiss Nancy Blodgett's appeal on the basis of her execution of the satisfaction of judgment. For the reasons that follow, we agree with this contention and hold that when Nancy executed the satisfaction of judgment she waived her right to continue her appeal.

It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. " 'Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.' " *Rauch* v. *Noble* (1959), 169 Ohio St. 314, 316, 8 O.O. 2d 315, 316, 159 N.E. 2d 451, 453, quoting *Lynch* v. *Lakewood City School Dist. Bd. of Edn.* (1927), 116 Ohio St. 361, 156 N.E. 188, paragraph three of the syllabus. See, also, *Seifert* v. *Burroughs* (1988), 38 Ohio St. 3d 108, 526 N.E. 2d 813.

Nancy maintains, however, that even though she signed the satisfaction of judgment and took its benefits, the satisfaction of judgment should not be held to have terminated her appeal because she signed the satisfaction of judgment involuntarily. She asserts that because she was unable to obtain a loan from the investment banking firm named as escrow agent on the basis of the trial court's judgment entry or to persuade the court of appeals to disburse funds from the escrow account during the appeal, she found herself in extreme financial distress. Therefore, she argues that the executed satisfaction of judgment should have no effect on her right to continue to prosecute her appeal.

In *Tallmadge* v. *Robinson* (1952), 158 Ohio St. 333, 49 O.O. 206, 109 N.E. 2d 496, this court declared that threats may be held to constitute duress " * * * if such threats overcome the will of such person, remove his capacity to act for himself and cause him to perform an act he is not legally bound to perform * * *." *Id.* at paragraph one of the syllabus. Nancy contends that she accepted the satisfaction of judgment because she faced the potential of penury and that prospect overcame her free will. We note that Nancy was never required to prove that her financial condition was as desperate as she claimed. No fact-finding is necessary, however, because even if Nancy believed herself to have been forced by circumstances to accept the benefits of the satisfaction of judgment, she was not a victim of "economic duress" as the ruling case law has defined it.

The law of duress as a reason to avoid a contract has evolved to encom-

pass "economic duress" as well as physical compulsion. 1 Restatement of the Law 2d, Contracts (1981), Section 176, Comment *a*. See, also, *United States* v. *Bethlehem Steel Corp.* (1942), 315 U.S. 289; *Hartsville Oil Mill* v. *United States* (1925), 271 U.S. 43 (recognizing economic duress as a legal theory). A person who claims to have been a victim of economic duress must show that he or she was subjected to "* * * a wrongful or unlawful act or threat, * * *" and that it "* * * deprive[d] the victim of his unfettered will." 13 Williston on Contracts (3 Ed. 1970) 704, Section 1617. Further, "* * * [m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." *Id.* at 708. The Restatement of the Law 2d, Contracts, *supra*, also requires that the one who coerces the victim be the other party to the agreement: "If a party's manifestation of assent is induced by an improper threat *by the other party* that leaves the victim no reasonable alternative, the contract is voidable by the victim." (Emphasis added.) *Id.* at 475, Section 175(1).

The United States Court of Claims summarized what a party must prove to establish duress: "['']An examination of the cases * * * makes it clear that three elements are common to all situations where duress has been found to exist. These are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) *that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities. * * *[']*" (Emphasis added.) *Urban Plumbing &*

*Heating Co.* v. *United States* (U.S. Ct. of Claims 1969), 408 F. 2d 382, 389-390, quoting *Fruhauf Southwest Garment Co.* v. *United States* (U.S. Ct. of Claims 1953), 111 F. Supp. 945, 951.

Because of the nature of the appellate process, Nancy could not receive the trial court award until her appeal was decided, unless she chose to terminate the appeal herself by executing the satisfaction of judgment. She may well have believed that this circumstance coerced her acquiescence to the satisfaction of judgment, but the workings of the judicial system are irrelevant in this context. To avoid the satisfaction of judgment, it must be shown that the one whose actions forced Nancy to accept the judgment was William, the other party to the agreement.

To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party. The record here is devoid of evidence of legal duress by William. Nancy does not assert that William threatened to keep the trial court award from her. William had a right to dispute on appeal her entitlement to the $2,765,000 awarded her by the trial court and to oppose her motion for temporary alimony filed in the court of appeals. Clearly, Nancy has failed to establish duress.

We decline to accept the proposition that if an appellant executes a satisfaction of judgment merely because she cannot afford to wait for the outcome of an appeal, that satisfaction of judgment may be subsequently avoided. Almost every settlement agreement contains some modicum of coercion or duress. An appeal or prospect of a trial always involves a degree of risk to both parties. The law en-

courages settlement of disputes. By executing the satisfaction of judgment, Nancy could be sure she collected $2,765,000. If she did not execute the document, the judgment awarded her by the trial court remained subject to the risk that William would convince the court of appeals to enforce the antenuptial agreement. It is noteworthy that Nancy made her choice with the benefit of the advice of counsel.

The court of appeals should have granted William's May 12, 1988 motion to dismiss because Nancy's execution of the satisfaction of judgment terminated her appeal. Therefore, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, BRYANT and RESNICK, JJ., concur.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for H. BROWN, J.